UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KATHY D. PATTON,

    Plaintiff,

v.                                                    Case No. 8:16-cv-1365-T-27AAS

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

    Defendant.
_____/

## ORDER

**BEFORE THE COURT** is the Report and Recommendation of the Magistrate Judge recommending that the Commissioner's decision denying Plaintiff's claims for a period of disability, disability insurance benefits, and supplemental security income be affirmed. (Dkt. 23). Plaintiff filed objections, (Dkt. 24), to which the Commissioner responded, (Dkt. 25). A district court may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1). Those portions of the report and recommendation to which objection is made are accorded *de novo* review. *Id.*; FED. R. CIV. P. 72(b)(3).

After a *de novo* review of the findings to which objections are made, and a review of the findings to which objection is not made for plain error, I find that the Commissioner's decision must be reversed and the case remanded based on the Administrative Law Judge's ("ALJ") failure to clearly articulate the reasons for affording little weight to the opinion of Plaintiff's treating physician.

**I.    PLAINTIFF'S OBJECTION**

Plaintiff's sole objection to the Report and Recommendation is that the ALJ rejected an opinion of Dr. Jay Azneer, Plaintiff's treating physician, without good cause. (Dkt. 24).

## II. STANDARD

The ALJ's decision is reviewed to determine whether the correct legal standards were applied, *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (per curiam), and if the decision as a whole is supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotation marks and citations omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id.* (internal quotation marks and citations omitted). Legal conclusions of the ALJ, however, are reviewed *de novo*. *Ingram v. Commissioner of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## III. DISCUSSION

There is a five-step, sequential evaluation process to determine whether a claimant is disabled. *Winschel*, 631 F.3d at 1178 (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004)). The first three steps evaluate whether (1) the claimant is currently engaged in substantial gainful activity, (2) the claimant has a severe impairment or combination of impairments, and (3) the impairment meets or equals the severity of the specified impairments in the Listing of Impairments. *Id.* The fourth step asks whether, based on the claimant's residual functional capacity ("RFC") assessment, the claimant can perform any of her past relevant work despite the limitations caused by her impairments. *Id.* At the fourth step, the ALJ considers "all the relevant medical and other evidence" in the case record to determine the claimant's RFC. *Phillips*, 357 F.3d at 1238 (quoting 20 C.F.R. § 404.1520(e)). The final step evaluates whether there are significant numbers

2

of jobs in the national economy the claimant can perform, given her RFC, age, education, and work experience. *Winschel*, 631 F.3d at 1178.

The ALJ found, as to steps one and two, that Plaintiff had not been engaged in substantial gainful activity and she had severe impairments including "idiopathic polyneuropathy involving the right foot; left shoulder supraspinatus capsulitis with tendinopathy from an impingement; questionable chronic fatigue syndrome without specific tender points; chronic obstructive pulmonary disease (COPD); chronic pain syndrome; and depression, anxiety/posttraumatic stress disorder (PTSD), and panic disorder without agoraphobia." (Decision, Dkt. 13-2 at pp. 22-23). Plaintiff has no objections relating to the findings and analysis at the first or second steps. (Objections, Dkt. 24). Rather, Plaintiff objects to the sections of the Magistrate Judge's report addressing the ALJ's determination, at steps three and four, that her impairments do not meet or medically equal the severity of listed impairments and that she had the RFC to perform light work with some specific restrictions. (Decision, Dkt. 13-2 at pp. 23-30; Objections, Dkt. 24). As noted, Plaintiff objects on the ground that the ALJ rejected without good cause Dr. Azneer's opinion regarding her physical and mental impairments. (Dkt. 24).

### A. *Dr. Azneer's History of Treatment of Plaintiff*

Jay Azneer, D.O., of M.D. D.O. Associates was Plaintiff's primary care physician from 2011 to 2014. (Treatment Records, Dkt. 13-9 at pp. 346-89); *see also* (October 23, 2014 Treatment Records of Pinellas Medical Associates, Dkt. 13-9 at p. 335) (identifying Dr. Azneer as Plaintiff's primary care physician).[1] His earliest medical records for Plaintiff indicate that her conditions

---

[1] Dr. Azneer's records indicate he started treating Plaintiff in 2011, but the treatment records in evidence date back only to October 29, 2012. (Treatment Records of Dr. Azneer dated October 29, 2012, Dkt. 13-9 at pp. 383-86) (noting that Plaintiff's visit with Dr. Azneer on that date is a "follow up" appointment).

3

included anxiety disorder, depressive disorder, chronic pain syndrome, osteoarthritis, myalgia, and myositis, among others. (Treatment Records, Dkt. 13-9 at p. 384). His muscoloskeletal examination indicated normal tone; normal motor strength; no contractures, malalignment, tenderness, or abnormalities of the bones, joints or muscles; normal movement of all extremities; back pain; arthralgias/joint pain; muscle aches; no swelling in the extremities; no muscle weakness; and no cyanosis, edema, varicosities, or palpable cord in the extremities. (*Id.* at pp. 385-86). His neurological examination indicated she had normal gait and station; grossly intact cranial nerves; numbness in her right leg; reflexes: DTRs 2+ bilaterally throughout; and no tremors, weakness, numbness, seizures, dizziness, headaches, or loss of consciousness. (*Id.*). His psychiatric examination indicated good judgment; normal mood and affect; active; alert; orientation to time, place, and person; normal recent memory; normal remote memory; depression; no sleep disturbances; and no alcohol abuse. (*Id.*). His assessment / plan indicates he prescribed her medication for depressive disorder. (*Id.* at 386).

Most of Dr. Azneer's findings and assessments for Plaintiff remained substantially the same throughout his treatment of her, with some exceptions. (*Id.* at pp. 346-83). The greatest changes occurred to her psychiatric diagnoses. (*Id.*). Treatment records for an appointment on December 27, 2012 indicate for the first time in the assessment / plan that Plaintiff had an anxiety disorder that would "remain managed" by diazepam that had already been prescribed to her for other reasons. (*Id.* at p. 374). Treatment records for a April 8, 2013 appointment indicate for the first time muscoloskeletal findings of malalignment, tenderness, and limited range of motion throughout her thorax. (*Id.* at p. 362). Treatment records for a June 10, 2013 appointment indicate for the first time that Plaintiff suffered from panic disorder without agoraphobia, she reported restless sleep, and Dr.

4

Azneer prescribed her xanax to replace the diazepam. (*Id.* at pp. 358-59). Appointment records for August 12, 2014 indicate that her anxiety medication had been changed to xanax, that her panic disorder without agoraphobia diagnosis included her complaints of "difficulty leaving her house," that her depressive disorder was being treated with sertaline, and that she was not to receive separate treatment for her agoraphobia. (*Id.* at pp. 355-56).

The last records of Plaintiff's appointments with Dr. Azneer are for appointments on October 13, 2014 and November 7, 2014. (*Id.* at pp. 346-53). His discussion notes for both of these appointments indicate that "[Plaintiff's] ability to cope has decreased markedly-she is at the limit of her endurance just to be in the office with me." (*Id.* at pp. 349, 353). The October 13, 2014 records indicate for the first time that Plaintiff's panic disorder without agoraphobia was "severe" and that she was under the care of psychiatrist Dr. Aaron Brooks for her depressive disorder. (*Id.* at pp. 352-53). The November 7, 2014 records indicate that she remained under psychiatric care and that there was "no change" to her severe panic disorder without agoraphobia. (*Id.* at p. 348).

### B. *Dr. Azneer's Responses to the Social Security Administration Questionnaires*

Dr. Azneer completed the Social Security Administration's "Orthopedic Questionnaire" and "Mental Status Report" on October 13, 2014. (Dkt. 13-9 at pp. 329-33). He handwrote his responses to the questionnaires. (*Id.*). He did not print his name anywhere in the responses, his signature is illegible, and there is nothing in the responses to indicate the identity of the person making the statements. (*Id.*). However, the questionnaires indicate the Social Security Administration mailed them to M.D. D.O. Associates, where Dr. Azneer practiced medicine. (*Id.*).

In response to the orthopedic questionnaire, Dr. Azneer diagnosed Plaintiff with degenerative arthritis and degenerative disc disease of the lumbar spine. (*Id.* at pp. 329-30). He checked spaces

5

indicating that Plaintiff's symptoms included decreased grip strength, decreased ability to perform gross manipulation, chronic pain, and radiculopathy, but he did not respond to a prompt that asked him to "[p]lease explain any positive responses above and provide examples." (*Id.*). On a scale of one to five, he indicated that Plaintiff's grip strength was 2/5 and her lower extremity strength was 1/5. (*Id.*). Dr. Azneer checked a space indicating that Plaintiff was not capable of performing fine/gross manipulations on a sustained basis, and explained that Plaintiff's "grip strength decreases over time with use." (*Id.*).

In response to the mental status questionnaire, Dr. Azneer diagnosed Plaintiff's mood and affect as "very brittle" and stated that she does not tolerate any stress at all. (*Id.* at pp. 331-33). He indicated that she reported suicidal ideations, she had poor concentration, her recent and immediate memory was intact, her remote memory was difficult, and she had no evidence of hallucinations. (*Id.*). His behavioral observations indicate that Plaintiff has mild gross and fine motor control, her general appearance was good, and she was dressed appropriately. (*Id.*). He indicated that her mood was poor, and noted that she was angry and depressed. (*Id.*). His handwritten diagnosis appears to be "severe depression." (*Id.*). He opined that Plaintiff was competent to manage her own social security benefits, if approved. (*Id.*). In response to a prompt asking whether Plaintiff is "capable of sustaining work activity for eight hours a day, five days a week" and asking him to explain his answer by "using examples of behavioral, objective data," Dr. Azneer opined "she has no emotional resources to deal with the stress" of holding a job. (*Id.*). He did not cite any data to support his opinion. (*Id.*).

## C. *The ALJ Afforded Little Weight to Dr. Azneer's Questionnaire Responses in Reaching His Decision*

The ALJ afforded little weight to the opinion expressed in the Social Security Administration questionnaire responses. (Decision, Dkt. 13-2 at pp. 28-29). Because there were no indications of the identity of the person who responded to the questionnaire, the ALJ was unable to determine the source of the responses and accordingly found that they had minimal probative value. (*Id.* at p. 28). The ALJ's findings regarding Dr. Azneer's responses to the orthopedic questionnaire and the mental status questionnaire, in pertinent part, are as follows:

> Overall, the statement indicated that the claimant was unable to perform fine and gross manipulation on a sustained basis. However, because this opinion's signature is illegible, and since there is no indication that the author was an acceptable medical source, its probative value is minimal. Moreover, the statement barely addresses the claimant's functional abilities, but merely finds that she is unable to sustain fine and gross manipulation. Based on the overall medical record and the clinical signs noted above, the undersigned finds that this opinion overstates the claimant's limitations. Therefore, it has been afforded little weight.
>
> . . . .
>
> As with the claimant's physical condition discussed above, the record contains an illegibly signed medical source statement dated October 13, 2014 that discusses the claimant's mental condition. . . . To conclude, the statements [sic] issues a blanket opinion that the claimant was incapable of handling the stress associated with any job, and therefore, was completely unable to work. However, this opinion is conclusory in nature and is not even supported by the mental status abnormalities noted in the statement itself. Rather, the statement merely indicates that some difficulties in concentration and memory would require accommodation. Notably, the undersigned has done so in the residual functional capacity statement by limiting the claimant to simple, routine, repetitive tasks. Otherwise, this statement's opinion is unsupported by the medical evidence of record. Accordingly, the undersigned afforded it little weight.

(*Id.* at pp. 28-29) (citations omitted) (citing Questionnaire, Dkt. 13-9 at pp. 329-33).

Plaintiff subsequently provided proof to the Appeals Council that Dr. Azneer completed the questionnaires. (Dkt. 13-14). Plaintiff objects to the Report and Recommendation on the ground that

7

the ALJ erroneously found that Dr. Azneer's responses were illegible and that there was no indication he was an acceptable medical source. (Objections, Dkt. 24 at pp. 1-2) ("Plaintiff first pointed out that the signature was that of Dr. Azneer as confirmed by the staff in his office.").

### D. *The ALJ Did Not Clearly Articulate His Reasons for Affording Little Weight to the Opinion of Dr. Azneer*

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) ("[A]bsent 'good cause,' the opinion of a claimant's treating physician must be accorded 'substantial' weight."). " '[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241. "With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1240-41). The ALJ " 'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.' " *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).

Because the ALJ did not recognize that Dr. Azneer was the source of the October 13, 2014 questionnaire responses, he appears not to have realized that he was weighing the opinion of Plaintiff's primary care physician. The ALJ cannot be faulted for the inability to recognize Dr. Azneer as the source of the questionnaire responses. His signature is indeed illegible, and his name does not appear anywhere in the responses. (Questionnaire Responses, Dkt. 13-9 at pp. 329-33). The

only indication that the respondent might have been Dr. Azneer is the fact that the questionnaire was sent to M.D. D.O. Associates. *See (id.)*.

Nevertheless, Dr. Azneer's questionnaire responses represent the opinion of Plaintiff's treating physician and are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Lewis*, 125 F.3d at 1440. The ALJ's decision to afford little weight to Dr. Azneer's opinion must therefore be examined to determine whether the ALJ clearly articulated the reasons for his decision, whether those reasons constitute good cause, and whether substantial evidence supports those reasons. *See Winschel*, 631 F.3d at 1179; *Phillips*, 357 F.3d at 1240-41.

Dr. Azneer opined that Plaintiff "has no emotional resources to deal with the stress" of holding a job. (Dkt. 13-9 at p. 333). He noted with regards to her current mental status that she has a very brittle mood, has suicidal ideations, has severe depression, and could not tolerate any stress at all, among other findings. (*Id.* at p. 331). The ALJ determined, without explanation, that Dr. Azneer's opinion was conclusory, was not supported by the mental status abnormalities noted in the statement itself, and was contradicted by the medical evidence of record. (Decision, Dkt. 29 at p. 29). Likewise, the ALJ rejected Dr. Azneer's opinion that Plaintiff could not sustain fine and gross manipulation after finding that it was not supported by the "overall medical record" without further explanation. (*Id.* at p. 28).

The ALJ's reason for concluding that Dr. Azneer's opinion regarding Plaintiff's mental impairments was contradicted by her medical record is unclear. Dr. Azneer's treatment records for October and November 2014, which fall within the same time frame as his questionnaire responses, indicate that Plaintiff's panic disorder had become severe and that her "ability to cope has decreased markedly-she is at the limit of her endurance just to be in the office with me." (Treatment Records,

Dkt. 13-9 at pp. 348-49, 352-53). Those findings appear to support, rather than contradict, Dr. Azneer's opinion in the questionnaire responses. Although the ALJ references those treatment records in the decision, he did not discuss the findings in those records that support Dr. Azneer's opinion. (Decision, Dkt. 13-2 at p. 29). Dr. Azneer's treatment records also indicated that Plaintiff was under the care of psychiatrist Dr. Aaron Brooks. (Dkt. 13-9 at pp. 352-53).

The record includes treatment records of Dr. Brooks and others from the Suncoast Center for Community Mental Health from June 2, 2014 to November 17, 2015. (Dkt. 13-9 at pp. 402-601). When Plaintiff first presented on June 2, 2014, she claimed that she suffered from post traumatic stress disorder, generalized anxiety, social anxiety, and borderline personality disorder. (*Id.* at p. 558). She also reported that she had no motivation to do anything, she cried all day, and she did not want to leave her home. (*Id.*). Her initial examination indicated that she had a cooperative attitude, her thoughts were coherent and organized, her motor activity was normal, her type of motion was unremarkable, she had no impairment to judgment or memory, and she had no disorientation. (*Id.* at p. 560). She was diagnosed with symptoms of post traumatic stress disorder, depression, and anxiety disorder. (*Id.* at pp. 548, 560).

The doctors and therapists at Suncoast Center for Community Mental Health put Plaintiff on a therapy plan and prescribed medication in addition to the medication already prescribed by Dr. Azneer. (*Id.* at pp. 538-42, 549, 552). She received regular treatment from a therapist. *See generally* (*id.* at pp. 402-601). Her records indicate that her psychiatric status improved with treatment and therapy. *See* (Dr. Brooks Apr. 8, 2015 Treatment Records, Dkt. 13-9 at p. 490) ("Psychiatrically, she is improved significantly."); (Dr. Brooks Aug. 28, 2014 Treatment Records, Dkt. 13-9 at p. 552) ("Psychiatrically, she is improved, but reporting anxiety.").

Although Plaintiff showed some improvement under the care of the Suncoast Center for Community Mental Health, she still consistently reported that her anxiety prevented her from leaving the house and performing simple tasks such as being around others and going to the grocery store. *See* (September 26, 2014 Treatment Records, Dkt. 13-11 at p. 449) ("Client states she has been experiencing an increase in social anxiety and has been neglecting grocery shopping due to fears."); (November 25, 2014 Treatment Records, Dkt. 13-11 at p. 442) ("She began session by discussing a recent interaction that caused her distress. She states a member of the HOA stopped by her home and client burst into tears."); (May 8, 2015 Treatment Records, Dkt. 13-10 at p. 405) ("Due to anxiety, client does not leave her home very often.").

Notably, Plaintiff was admitted to a hospital under the Baker Act from March 12 to March 13, 2015, relating to alcohol induced depressive disorder, alcohol use disorder, and cannabis use disorder, after she went to a neighbor's house and made multiple suicidal statements. (April 15, 2015 Psychiatric Services Progress Note, Dkt. 13-10 at p. 419). She later reported to her therapist that the incident occurred after she tried to go to the beach with a friend because she did not want to isolate all the time. (April 2, 2015 Treatment Records, Dkt. 13-10 at p. 423). But she got into an argument with her friend and returned home. (*Id.*). After she returned home, a neighbor became concerned for her well being and called the authorities. (*Id.*). The ALJ discussed some of the details in the treatment records from the Suncoast Center for Community Mental Health, including Plaintiff's hospitalization under the Baker Act, but did not adequately address the details that support Dr. Azneer's opinion regarding Plaintiff's mental impairment. (Dkt. 13-2 at pp. 23-24, 28-30).

Similarly, the ALJ generally discussed Plaintiff's medical history with regards to her physical impairments. (Decision, Dkt. 13-2 at pp. 26-28) (citing Treatment Records of Pinellas

11

Medical Associates, Dkt. 13-9 at pp. 334-45; Treatment Records of M.D. D.O. Associates, Dkt. 13-9 at pp. 346-89; Treatment Records of Professional Healthcare of Pinellas, Dkt. 13-9 at pp. 390-401). Her medical history, in pertinent part, indicates issues with pain and limited range of motion in her left arm and shoulder, pain associated with her degenerative diseases, and decreased sensation in her lower extremities. *See generally* (*id.*). The ALJ did not clearly articulate how Dr. Azneer's opinion in the questionnaire responses "overstated" her limitations, in light of her overall medical record. (*Id.* at p. 28). For example, Dr. Azneer's indication that her lower extremity strength is 1/5 is not clearly inconsistent with her medical history of decreased sensation in her lower extremities. An administrative law judge who affords little weight to the opinion of a treating physician must clearly articulate how the medical evidence counters the physician's opinion. *Schnorr*, 816 F.2d at 582.

Review of the decision and the record evidence shows that the ALJ failed to clearly articulate the reasons for affording little weight to Dr. Azneer's opinion regarding Plaintiff's physical and mental impairments. A failure to clearly articulate the reasons behind a decision to disregard the opinion of a treating physician is reversible error. *See Lewis*, 125 F.3d at 1440. The ALJ's lack of clearly articulated reasons is exacerbated by the fact that there is some evidence in Plaintiff's medical record to support Dr. Azneer's opinion. *See Schnorr*, 816 F.2d at 581 (the Secretary clearly articulated good cause for rejecting one treating physician's opinion of total disability from a "significant" pulmonary impairment where the physician who actually performed pulmonary tests found only a "mild" impairment, but failed to articulate good cause for rejecting the opinions of other treating physicians where "the medical evidence does not conclusively counter these doctors' opinions"); *see also Lewis*, 125 F.3d at 1441 (reversing an administrative law judge's decision to afford more weight to the opinions of consulting physicians over treating physicians where the

12

judge's reasons, though clearly articulated, were not supported by substantial evidence).

Accordingly, this action must be remanded to the Commissioner for a proper consideration of Dr. Azneer's medical opinion expressed in the questionnaire responses. *Schnorr*, 816 F.2d at 581.[2]

## IV. CONCLUSION

For the reasons stated:

(1) Plaintiff's Objections (Dkt. 24) are **SUSTAINED**.

(2) The Report and Recommendation (Dkt. 23) is **REJECTED**.

(3) The decision of the Defendant Commissioner is **REVERSED** and this case is **REMANDED** for further administrative proceedings consistent with this Order.

(4) The Clerk is directed to **ENTER JUDGMENT** in favor of Plaintiff consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

(5) The Clerk is directed to **CLOSE** the file.

**DONE AND ORDERED** this 15th day of August, 2017.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of record

---

[2] Because this action must be remanded to the Commissioner for reconsideration of Dr. Azneer's opinion with regards to steps three and four of the disability analysis, there is no need to address whether the ALJ committed plain error at step five of the analysis.